IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03080-WJM-CBS

MARSHAUN STEWART,
          Plaintiff,
v.

BLOODWORTH [sic], Associate Warden,
BURTON, Lt.,
WORKSON [sic], Counselor, and
HELICKERSON [sic], Psychological,
          Defendants.[1]

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on: (1) Defendants' "Motion for Summary

Judgment Pursuant to Fed. R. Civ. P. 56 for Lack of Exhaustion of Administrative Remedies;"

(2) Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6);" and (3) Plaintiff's

"Motion for Summary Judgment." Pursuant to the Order Referring Case dated May 15, 2012

(Doc. # 38) and the memoranda dated August 7, 2012 (Doc. # 52), September 21, 2012

(Doc. # 62), and November 19, 2012 (Doc. # 78), these matters were referred to the

Magistrate Judge. The court has reviewed the Motions, the Responses filed October 5, 2012

(Doc. # 66), October 9, 2012 (Doc. # 67), and October 22, 2012 (Doc. # 72), the Replies

(filed October 19, 2012) (Doc. # 71) and November 5, 2012 (Doc. # 73), the exhibits, the

pleadings, the entire case file, and the applicable law and is sufficiently advised in the

premises.

---

[1] "Bloodworth," "Workson," and "Helickerson" are correctly spelled as Bludworth, Worsham, and Herlickson.

I.      Statement of the Case

Mr. Stewart is currently incarcerated at the United States Penitentiary in Atwater,

California ("USP Atwater").   The claims remaining in this civil action are based on alleged

conduct by the Defendants during Mr. Stewart's incarceration at the Federal Correctional

Institution in Florence, Colorado ("FCI Florence") between June 1, 2011 and March 21, 2012.

Proceeding *pro se*, Mr. Stewart filed his initial Complaint on November 25, 2011 pursuant to

28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  (*See*

Doc. # 1).  At the court's direction, Mr. Stewart filed his Amended Complaint ("AC") on May 3,

2012.  (*See* "Order Directing Plaintiff to File Amended Complaint" (Doc. # 14), "Order on

Pending Motions" (Doc. # 21), Amended Complaint (Doc. # 29)).  On May 11, 2012, Senior

District Judge Babcock dismissed from this lawsuit Defendants Rhodes, Klein, Tucker,

George, Franco, and Mettry and the claims against them.  (*See* "Order to Dismiss in Part and

to Draw this Case to a District Judge and to a Magistrate Judge" (Doc. # 33)).  Remaining

before the court are Mr. Stewart's claims for violation of his Fourteenth Amendment due

process and Eighth Amendment rights against Defendants Bludworth, Burton, Workson, and

Helickerson.[2]  Mr. Stewart seeks monetary damages and "not to be retaliated against and

prolong [sic] lockdown confinement."  (*See* Doc. # 29 at 26 of 27; Doc. # 1 at 22 of 23).

_____

[2]      While Mr. Stewart alleges violation of his Fourteenth Amendment rights, it is the
Due Process Clause of the Fifth Amendment that protects against due process violations by
the federal government.  *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952)
(Fifth Amendment applies to and restricts only the Federal Government).  In the AC, Mr.
Stewart alleges only conduct by federal government actors.  The prison where the events
occurred is a federal facility and Defendants are or were federal employees.  As none of the
Defendants are subject to the due process clause of the Fourteenth Amendment, Mr. Stewart
fails to state a Fourteenth Amendment claim.  Mr. Stewart's due process claim is more
properly addressed under the Fifth Amendment.

II.    Defendants' Motion for Summary Judgment

Defendants move pursuant to Fed. R. Civ. P. 56 for summary judgment on all claims

in the AC for the reason that Mr. Stewart did not exhaust his administrative remedies.

> Summary judgment is proper when there is no genuine issue as to any
> material fact and the movant is entitled to judgment as a matter of law.  A
> dispute is "genuine" if the issue could be resolved in favor of either party.  A fact
> is "material" if it might reasonably affect the outcome of the case.
>     A movant who does not have the burden of proof at trial must show the
> absence of a genuine fact issue.  By contrast, a movant who bears the burden
> of proof must submit evidence to establish every essential element of its claim
> or affirmative defense.  In either case, once the motion has been properly
> supported, the burden shifts to the nonmovant to show, by tendering
> depositions, affidavits, and other competent evidence, that summary judgment
> is not proper.  All the evidence must be viewed in the light most favorable to the
> party opposing the motion.  However, conclusory statements and testimony
> based merely on conjecture or subjective belief are not competent summary
> judgment evidence.

*Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F. Supp. 2d 1180, 1182-83

(D. Colo. 2004) (citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent

standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110

(10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  "The *Haines* rule

applies to all proceedings involving a pro se litigant, including . . . summary judgment

proceedings."  *Id.*, at n. 3 (citations omitted).  However, the court cannot be a pro se litigant's

advocate.  *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As the AC has been sworn to under penalty of perjury (*see* Doc. # 29 at 26 of 27), the

court may treat it as an affidavit.  *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir.

1997).  Where the court treats a verified complaint as an affidavit, whether a party's affidavit

in opposition to summary judgment is "sufficient to create a genuine issue of material fact

must be evaluated in light of the principle that conclusory allegations without specific

3

supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

Defendants move for summary judgment on the ground that Mr. Stewart failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1996, ("PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Booth v. Churner*, 532 U.S. 731, 731-32 (2001) (PLRA requires exhaustion in all matters regardless of remedy sought and availability of remedy at the agency level).

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). *See also Jones v. Bock*, 549 U.S. at 210-212 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109,

4

1112 (10th Cir. 2007).  "[T]o properly exhaust administrative remedies prisoners must

complete the administrative review process in accordance with the applicable procedural

rules, -- rules that are defined not by the PLRA, but by the prison grievance process itself."

*Jones v. Bock*, 549 U.S. at 218 (internal quotation marks and citation omitted).  Thus, it is the

prison's own grievance procedures that set forth what the prisoner must do in order to

exhaust his or her administrative remedies.  *Id.*, 549 U.S. at 218 (citation omitted).  "[I]t is the

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

*Id.*

    After *Jones v. Bock*, 549 U.S. 199, 211 (2007), a failure to exhaust administrative

remedies constitutes an affirmative defense which must be pled and proved by defendants.

*Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).  Defendants submit evidence that

Mr. Stewart failed to exhaust the requisite administrative remedies as to his claims.  The

Federal Bureau of Prisons ("BOP") has a four-step administrative process that provides for

review at the institutional, regional and national levels "through which inmates may seek

formal review of an issue which relates to any aspect of their confinement [with exceptions

not pertinent to this case], if less formal procedures have not resolved the matter."  28 C.F.R.

§ 542.10 -542.18.  (*See also* Declaration of Clay C. Cook, Attachment 1 to Defendants'

Motion (Doc. # 77-1) at ¶ 5).  The court may take judicial notice of the BOP's administrative

process.  *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court can

take judicial notice of agency rules and regulations);  *Antonelli v. Ralston*, 609 F.2d 340, 341,

n. 1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement).

    The BOP's administrative procedures provide that "an inmate shall first present an

issue of concern informally to staff, and staff shall attempt to informally resolve the issue

before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13(a).

Following informal attempts to resolve a complaint, an inmate must submit to the Warden "a formal written Administrative Remedy Request, on the appropriate form (B-9), 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). If unsatisfied with the Warden's response, the inmate may file "an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If unsatisfied with the Regional Director's response, the prisoner "may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). At any stage of the process, "[i]If the inmate does not receive a response within the time allotted for reply, . . . the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. The appeal to the General Counsel at the Central Office constitutes the final administrative appeal. 28 C.F.R. § 542.15(a). An inmate may not raise issues in an appeal that were not raised in the lower level filing. 28 C.F.R. § 542.15(b)(2).

The BOP regularly maintains records of administrative complaints filed by inmates under the Bureau Administrative Remedy Program in a database called SENTRY. (*See* Doc. # 77-1 at ¶¶ 3, 7-8). One of the functions of the SENTRY database is to track administrative remedy complaints and appeals, and it allows for a computerized search of complaints and appeals filed by a specific inmate. (*See id.* at ¶ 7).

> Each formal complaint (i.e. BP-9, BP-10, and BP-11) is logged into SENTRY at the receiving location. If the complaint is an initial filing, it receives a unique Remedy ID Number upon initial entry, which follows the complaint throughout the appeal process. Each Remedy ID Number also contains an extender that identifies the level of review. The extension F-1 indicates the complaint was filed at the institution level (BP-9). The extension R-1 indicates the complaint or appeal was filed at the regional level (BP-10). The extension A-1 indicates the appeal was filed at the national level (BP-11). The number at the end of the extension may change if the remedy or appeal is initially rejected and is then

6

re-filed due to a technical problem, such as improper form, failing to include
documentation, or improper filing at that level.

(*See* Doc. # 77-1 at ¶ 8).

Defendants point to Mr. Stewart's administrative grievances to support their Motion.

Since his incarceration at BOP, Mr. Stewart has filed a total of 20 Requests for Administrative

Remedy ("RAR") or appeals.  (*See* Administrative Remedy Generalized Retrieval

(Administrative Remedy Log) (Doc. # 77-3) at 3-12 of 12).  Eleven of Mr. Stewart's

administrative grievances pertain to the claims in the AC of inadequate medical or mental

health care, placement in the Special Housing Unit ("SHU") pending an investigation into

stalking, and money withdrawn from his trust fund account without his consent.  (*See* Doc. #

77-1 at ¶ 11;  Doc. # 77-3 at 3-12 of 12; Doc. # 29 at 19-21 of 27).

In the claims that remain in the AC, Mr. Stewart alleges that Defendant Bludworth

deliberately prevented him from obtaining medical attention for his depression on August 19,

2011, when he placed him in administrative detention pending investigation of a disciplinary

write-up by Defendant Burton.  (*See* Doc. # 29 at 3-5, 13, 22 of 27).  He alleges that in

retaliation for his efforts to seek medical attention, Defendant Herlickson made a false

statement to the prison administration that he had been stalking a female medical staff

member.  (*See id.* at 5-7 of 27).  Mr. Stewart alleges that he was denied due process in the

prison disciplinary proceeding, which resulted in the loss of good time credits and privileges.

(*See id.* at of 27). He also alleges that he was denied due process by Defendant Worsham

when money was taken from his inmate trust account in January and March 2012 for copying

costs associated with the instant litigation.  (*See* Doc. # 29 at 9 of 27).

On August 9, 2011, Mr. Stewart filed a BP-9 claiming that he has a mental disability

and should be assigned a job that allows him the flexibility to not work when his mental

illness does not allow him to.  (See Doc. # 77-1 at ¶ 12;  RAR No. 652375-F1 (Doc. # 77-4 at 3-4 of 4);  Doc. # 77-3 at 2-3 of 12; Doc. # 51 at 8 of 11; Doc. # 1 at 10 of 23).  This administrative grievance precedes the alleged conduct that occurred on or after August 19, 2011 that is the basis for the claims in the AC.  Mr. Stewart's administrative grievances pre-dating the complained-of conduct cannot exhaust his administrative remedies.  *See Ross v. Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) ("A grievance obviously cannot exhaust administrative remedies for claims based on events that have not yet occurred."), *overruled on other grounds by Jones*, 549 U.S. at 199.  Mr. Stewart attempted to file four appeals of the response to this BP-9, all of which were rejected for procedural reasons, including untimeliness and failure to submit a copy of the BP-9.  (*See* Doc. # 77-1 at ¶ 12;  RAR Nos. 652375-R1, 652375-A1, 652375-R2, 652375-A2 (Doc. # 77-3 at 5-8 of 12); *see also* Doc. # 1 at 11-20 of 23).  In sum, Mr. Stewart did not exhaust administrative remedies for any claims regarding his mental disability and work assignments.

As to his claim that he was prevented from seeing a doctor on August 19, 2011, Mr. Stewart did not raise this claim in any of his administrative grievances.  (*See* Doc. # 77-1 at ¶¶ 9-15, 17-19, 21;  Doc. # 77-3).  Mr. Stewart failed to exhaust the requisite administrative remedies for his claims for violation of his Eighth Amendment rights based on the failure to be seen by a doctor on August 19, 2011.

Mr. Stewart filed two RARs regarding an investigation for stalking and a "knot" on his forehead.  (*See* Doc. # 77-1 at ¶ 13;  No. 657081-F1 (Doc. # 77-3 at 5 of 12).  These are the only RARs that appear related to Mr. Stewart's claims based on a false statement that he had been stalking a female medical staff person and that he was denied due process when he was put on administrative detention pending an investigation into the alleged stalking.  His first RAR, a BP-9, was rejected for procedural reasons.  On November 2, 2011, the Warden

8

responded to Mr. Stewart's second RAR that he had been medically evaluated for the knot on his forehead on October 7, 2011. (*See id.;* RAR No. 657081-F2 (Doc. # 29 at 16-18, 24 of 27);  Doc. # 77-3 at 6 of 12).  Mr. Stewart attempted to file two appeals that were both rejected for procedural reasons.  The first appeal, a BP-10 filed on December 5, 2011, was rejected on December 5, 2011 as untimely because Mr. Stewart waited more than 20 days to file it and for failure to submit only up to one letter-size continuation page.  (*See* Doc. # 77-1 at ¶ 13;  RAR No. 657081-R1 (Doc. # 77-3 at 7 of 12);  28 C.F.R. § 542.15(a) (BP-10 must be filed 20 calendar days of the date the Warden signed the response" to the BP-9)).  The second appeal, a BP-11 filed on January 10, 2012, was rejected as untimely.  (*See* Doc. # 77-1 at ¶ 13;  RAR No. 657081-A1 (Doc. # 77-3 at 8 of 12)).  The rejection of Mr. Stewart's untimely BP-10 was issued on December 5, 2011.  Mr. Stewart's BP-11 was filed on January 10, 2012, more than 30 days later.  (*See* 28 C.F.R. § 542.15(a) (BP-11 must be filed "within 30 calendar days of the date the Regional Director signed the response" to the BP-10). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust," *Jones v. Bock*, 549 U.S. at 218, but compliance must be complete, that is, the inmate must abide by all of the "agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90–91.  Mr. Stewart failed to exhaust the requisite administrative remedies for his claims regarding a false statement that he had been stalking a female medical staff person and that he was denied due process when he was put in administrative detention pending an investigation into the alleged stalking.[3]

---

[3]     Further, Mr. Stewart may not challenge through this *Bivens* action the disciplinary proceeding that he alleges resulted in deprivation of good time credits because he has not shown that the disciplinary conviction has been overturned.  (*See* Doc. # 33 at 6 of 8 (citing *Edwards v. Balisok*, 520 US 641 (1997); *Crow v. Perry*, 102 F.3d 1086, 1087 (10th Cir. 1996)).

On February 2, 2012, Mr. Stewart filed a BP-9 regarding money taken from his inmate account for court copies, not receiving stamps from commissary, and his inability to pay for over-the-counter medications.  (*See* Doc. # 77-1 at ¶ 14; RAR No. 677386-F1 (Doc. # 77-3 at 9 of 12)).  On March 2, 2012, the Warden responded that Mr. Stewart owed $3.57 that must be paid before he would be permitted to spend any money from his inmate account.  (*See* Doc. # 77-1 at ¶ 14;  Doc. # 29 at 23 of 27;  Doc. # 77-3 at 9 of 12).  Mr. Stewart attempted to file an appeal, a BP-10, on March 14,  2012, that was rejected for the procedural reason that he failed to submit a complete set of the request or appeal form.  (*See* Doc. # 77-1 at ¶ 14; RAR No. 677386-R1 (Doc. # 77-3 at 11 of 12);  28 C.F.R. § 542.15(b)(1) ("Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP–10) and accompanied by one complete copy or duplicate original of the institution Request and response")).  Mr. Stewart was provided the opportunity to resubmit the appeal in the proper form within ten (10) days from the date of the rejection.  *See id.*  Mr. Stewart did not resubmit the appeal.  (*See* Doc. # 77-3).  Mr. Stewart never filed a BP-11.  Thus, Mr. Stewart did not exhaust the requisite administrative remedies for his claim that money was taken from his inmate trust account in January and March 2012 for copying costs.

In his Response to Defendants' Motion for Summary Judgment, Mr. Stewart argues that he "made every effort" to exhaust his administrative remedies "as best he could."  (*See* Doc. # 72 at 1-2, 3, 5 of 12).  He states that he was unable to review a copy of his BP-9 for RAR No. 652375-F1 and unable to mail out a Regional Administrative Remedy while he was in administrative detention between August 19, 2011 and December 22, 2011.  (*See* Doc. # 72 at 3-9 of 12; Doc. # 29 at 4 of 27).  Mr. Stewart's arguments do not suffice to defeat Defendants' Motion.

First, "the doctrine of substantial compliance does not apply" to exhaustion under the

PLRA. *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (rejecting assertion that inmate need not properly complete the grievance process or correct deficiencies in their grievances).  Second, Mr. Stewart did not raise his claim that he was prevented from seeing a doctor on August 19, 2011 in any administrative grievance.  His argument that he was unable to review a copy of his BP-9 or to mail out his Regional Administrative Remedy while he was in administrative detention does not establish that he exhausted his administrative remedies as to this claim.

Third, the evidence does not demonstrate that Mr. Stewart was prevented from exhausting his administrative remedies.  "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted).  *See also Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011) (". . . when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available. . . .'"); *Baldauf v. Garoutte*, 2005 WL 1499424, at *3 (10th Cir. June 24, 2005) ("[T]he plain meaning of 'available' indicates that if a prisoner is hindered from utilizing the grievance procedure, then that grievance procedure is not available.").[4]  "[D]istrict courts are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials before dismissing a claim for failure to exhaust." *Little*, 607 F.3d at 1250 (citation omitted).  The record shows that Mr. Stewart was provided a copy of his BP-9 in September 2011.  (*See* Doc. # 72 at 10 of 12).  The record also demonstrates that Mr. Stewart filed numerous RARs and appeals, including three appeals of his August 9, 2011

---

[4]        A copy of any unpublished case cited is attached to this Recommendation.

RAR No. 652375, between August 19, 2011 and December 22, 2011, while he was in administrative detention.  (*See* Doc. # 77-3 at 4-7 of 12).  Mr. Stewart does not allege or demonstrate any action Defendant Worsham took to hinder him from utilizing the grievance procedure.  No more availing is Mr. Stewart's argument that the slowness of the mail caused him to miss deadlines for filing his administrative remedies.  An administrative request or appeal is considered filed on the date it is logged into the Administrative Remedy Index as received at the inmate's facility.  *See* 28 C.F.R. § 542.18.

Mr. Stewart has not alleged or demonstrated that he is properly excused from exhausting his administrative remedies.  *See Tuckel*, 660 F.3d at 1254 (excusing an inmate from exhausting administrative remedies where the inmate shows "(1) that the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust").  Viewing the evidence in the record in a light most favorable to Mr. Stewart and drawing all reasonable inferences in his favor, *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009), the court concludes that the record supports the affirmative defense that Mr. Stewart did not exhaust his available administrative remedies as required by the PLRA.  Mr. Stewart has not established that he exhausted his administrative remedies at all required levels before filing this civil action.  Defendants are thus entitled to summary judgment on all of the claims remaining in the AC.

Accordingly, IT IS RECOMMENDED that:

1.    Defendants' "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 for Lack of Exhaustion of Administrative Remedies" (filed November 27, 2012) (Doc. # 77) be

GRANTED and that judgment on the Amended Complaint (Doc. # 29) be entered in favor of Defendants and against Plaintiff.

2.      Plaintiff's "Motion for Summary Judgment" (filed August 6, 2012) (Doc. # 51) be DENIED in light of the court's recommendation regarding Defendants' Motion for Summary Judgment.

3.      Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed September 21, 2012) (Doc. # 61) be denied as moot in light of the court's recommendation regarding Defendants' Motion for Summary Judgment.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 2nd day of January, 2013.

BY THE COURT:


   s/ Craig B. Shaffer
United States Magistrate Judge